# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **MONTRELL KILPATRICK** | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | |
| | ) | |
| **HCA HUMAN RESOURCES, LLC., AND** | ) | |
| **BROOKDALE SENIOR LIVING, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## DEMAND FOR JURY TRIAL

### Jurisdiction

1. This Court has Federal Question jurisdiction over the claims raised herein, pursuant to Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, 42 USC 1981(a).

2. This Court has supplemental jurisdiction over the State causes of action pursuant to 28 U.S.C. § 1367.

3. Plaintiff, was employed in Williamson County, Tennessee and at all times relevant to this claim, was a citizen of Antioch, Tennessee.

4. Defendant one is HCA Human Resources LLC, hereafter referred to as HCA who does business at 811 Royal Parkway, Nashville, TN 37214 and whose registered agent per the Secretary of State is CT Corporation System, 800 S. Gay Street, Knoxville, TN 37929.

5. Defendant two is Brookdale Senior Living, Inc., located at 111 Westwood Place, Suite 200, Brentwood, TN 37027 and whose registered agent per the Secretary of State is Corporation Service Company, 298 Poston Ave. Nashville, TN 37203-1312.

6. Venue is appropriate as the acts of the Complaint took place in Williamson County and/or Davidson County, Tennessee.

7. Plaintiff sufficiently exhausted all available administrative remedies on his claims as the EEOC issued a dismissal and notice of right to file a civil action concerning these claims fewer than 90 days of the filing of this action. The Right to Sue Notices are attached as Exhibit A.

8. Brookdale Senior Living employs more than 15 employees.

9. HCA employs more than 15 employees.

## Allegations

### Count 1
### HCA – Racial Discrimination
### Hostile Work Environment

10. Plaintiff is an African American and within a protected class.

11. Plaintiff suffered discrimination within the terms and conditions of employment because of his race of severe and pervasive harassment starting with racial comments like "I know you people know how to fry chicken".

12. Plaintiff suffered discrimination within the terms and conditions of employment because of his race of severe and pervasive harassment when they constantly referred to him as you people, and people like you.

13. Plaintiff suffered discrimination within the terms and conditions of employment when supervisor tried to use "black lingo" when commenting on his clothing.

14. Plaintiff suffered discrimination, when the supervisor's systematically started progressive write up procedures to get rid of him because of his race.

15. Plaintiff suffered discrimination when the supervisor's systematically started progressive write up procedures to include writing him up for sexually harassing two women in his department.

16. The write up was clearly a ruse since the Plaintiff is a gay man.

17. It is during this write up that Plaintiff was forced to disclose his sexual orientation, that he was gay, and therefore did not sexually harass women, much to the surprise of those manufacturing the write up.

18. It is after this disclosure that the bible verses, pink sunglasses, a bible and pink nail polish were systematically left on his desk as found in count two.

19. As a result of the activities outlined in paragraphs 10 to the present Plaintiff suffered adverse actions in the form of financial loss, loss of pay, failure to promote, humiliation and ultimate discharge.

20. Plaintiff was qualified for his position.

21. Paragraphs 10 through the present evidenced how Plaintiff was treated differently from other similarly situated white employees.

22. Plaintiff requests general damages, and specifically punitive damages according to proof.

## Count 2
## HCA - Sex Discrimination
## Hostile Work Environment

23. Plaintiff is a homosexual and within a protective class.

24. Plaintiff suffered discrimination within the terms and conditions of employment because of his sexual orientation(2000e-2(a)(1)) wherein he was subjected to a hostile work environment of severe and pervasive harassment when supervisor Lea Hackett and others left bible verses on post-its with her initials on his desk, upon learning he was homosexual.

25. Plaintiff suffered discrimination within the terms and conditions of employment because of his sexual orientation (2000e-2(a)(1)) wherein he was subjected to a hostile work environment of severe and pervasive harassment when someone left a bible on his desk upon learning he was a homosexual.

26. Plaintiff suffered discrimination within the terms and conditions of employment because of his sexual orientation (2000e-2(a)(1)) wherein he was subjected to a hostile work environment of severe and pervasive harassment when the supervisor and others left pink nail polish on his desk upon learning he was a homosexual.

27. Plaintiff suffered discrimination within the terms and conditions of employment because of his sexual orientation (2000e-2(a)(1)) wherein he was subjected to a hostile work environment of severe and pervasive harassment when the supervisor and others left pink sunglasses on his desk upon learning he was a homosexual.

28. Plaintiff suffered discrimination within the terms and conditions of employment because of his sexual orientation (2000e-2(a)(1)) when the company started a progressive disciplinary program in order to terminate him upon learning he was a homosexual.

29. Plaintiff suffered discrimination within the terms and conditions of employment because of his sexual orientation (2000e-2(a)(1)) wherein he was subjected to a hostile work environment of severe and pervasive harassment when the company started an unfounded campaign requesting tuition reimbursement, knowing it had been approved.

30. As a result of the activities outlined in paragraphs 22 to the present Plaintiff suffered adverse actions in the form of financial loss, loss of pay, failure to promote, humiliation, and ultimately constructive discharge.

31. Plaintiff was qualified for his position.

32. Paragraphs 23 through the present evidence how Plaintiff was treated differently from other similarly situated straight employees.

33. Plaintiff requests general damages and specifically punitive damages according to proof.

## Count 3
## HCA - Retaliation

34. On or about March 10, 2016, Plaintiff was suspended without pay from HCA.

35. Said suspension is without merit.

36. On or about March 15, 2016, Plaintiff filed an EEOC charge taking Agency Charge No: 494-2016-00955.

37. A peer review was scheduled for April 16, 2016 to review the suspension.

38. Plaintiff opted not to go through with the review upon learning same would not be conducted in good faith.

39. Instead, Plaintiff obtained a new job at Brookdale Senior Living.

40. Subsequently, Brookdale alleges an anonymous call was received regarding Mr. Kilpatrick's HCA personnel file and an alleged discrepancy between the March 10th date and the April 16th date outlined in Paragraphs 36 and 37.

41. The nature of the call and personal information known only to HCA ties the call to HCA.

42. Said call was an intentional, bad faith act to interfere with Mr. Kilpatrick's subsequent position in direct retaliation for filing the charge.

43. As a result of the retaliation, Mr. Kilpatrick sustained damages in the form of loss pay, lost benefits, humiliation, and requests damages to include punitive damages.

Count 4
Tortious Interference with Employment
Contract

44. Subsequent to Mr. Kilpatrick's employment at HCA, he obtained employment at Brookdale Senior Living.

45. His position at Brookdale included an employment contract.

46. The nature and extent of Mr. Kilpatrick's employment contract with Brookdale is of no concern to HCA, no business of HCA, and HCA had no dog in that hunt.

47. Instead, HCA undertook the action of calling Brookdale either on a hotline, or via other means, to relay falsehoods and innuendos regarding Mr. Kilpatrick's employment at HCA.

48. Instead, HCA undertook the action of intentionally interfering with his continued employment claiming he lied on a Brookdale employment application.

49. Said actions were for the purpose of either willfully or recklessly interfering with subsequent employment and a subsequent employment contract.

## Count 5
### Tortious Interference with Business Relationship

50. Subsequent to Mr. Kilpatrick's employment at HCA, he entered into a business relationship with Brookdale Senior Living.

51. HCA was aware of his business relationship with Brookdale.

52. His position at Brookdale included an employment contract.

53. The nature and extent of Mr. Kilpatrick's employment contract with Brookdale is of no concern to HCA, no business of HCA, and HCA had no dog in that hunt.

54. Instead, HCA undertook the action of calling Brookdale either on a hotline, or via other means, to relay falsehoods and innuendos regarding Mr. Kilpatrick's employment at HCA thus intentionally trying to cause the breach or termination of that relationship.

55. Instead, HCA undertook the action of intentionally interfering with his continued employment claiming he lied on a Brookdale employment application.

56. Said actions were for the purpose of either willfully or recklessly interfering with subsequent employment and a subsequent employment contract for an improper motive.

57. As a result of said actions, Mr. Kilpatrick was suspended, harassed and sustained actual damages.

## Count 6
### Brookdale – Racial and Sexual Discrimination
### Hostile Work Environment

58. Plaintiff is an African American and within a protected class.

59. Plaintiff was the only African American in his department.

60. Plaintiff suffered discrimination within the terms and conditions of employment because of his race of severe and pervasive harassment when, he was told "you people

can handle it", "this has happened to you guys" and "people like you are used to this" and "you need to stay in your lane" when he questioned his demotion.

61. Plaintiff suffered discrimination within the terms and conditions of employment when he was regularly treated differently than his two white counter parts, in the manner that their names were listed on the white board.

62. Plaintiff suffered discrimination within the terms and conditions of employment when he was demoted for no cause, and his two white counterparts were promoted.

63. Plaintiff suffered discrimination within the terms and conditions of employment when his pay was decreased, while his white counterpart's pay was increased.

64. Plaintiff suffered discrimination within the terms and conditions of employment, when his desk was removed to a remote area of the office.

65. Plaintiff suffered discrimination when the supervisor's systematically started progressive write up procedures to include a suspension allegedly stemming from an "anonymous" and spurious phone call that is the subject of Count 3 which is incorporated herein.

66. Plaintiff suffered discrimination when HCA and Brookdale colluded to have him terminated based upon his EEOC filing.

67. Plaintiff suffered discrimination when his phone was reported by the management as stolen, then wiped clean, and his contacts deleted.

68. Plaintiff suffered discrimination when his contacts and information were reported by the management as stolen.

69. Brookdale discriminated against Plaintiff when a suspension was manufactured based upon the collusion between HCA and Brookdale via "anonymous phone tip".

70. The suspension in paragraph 69 was reversed within hours by the Chief Human Resources Office.

71. Plaintiff was isolated and his desk removed from the "white" area.

72. Plaintiff suffered racial discrimination a few days after the suspension reversal, when Plaintiff was again provided a spurious and phony write up for a computer issue that occurred 6 months earlier.

73. The official reason given by Brookdale for termination is Plaintiffs refusal to sign a corrective action referred to in paragraph 72 for a computer error that occurred six months earlier.

74. Upon information and belief, white employees are not terminated up for failing to sign a corrective action.

75. As a result of the activities outlined in paragraphs 58 to the present Plaintiff suffered adverse actions in the form of financial loss, loss of pay, failure to promote, humiliation and ultimate discharge.

76. Plaintiff was qualified for his position.

77. Paragraphs 58 through the present evidenced how Plaintiff was treated differently from other similarly situated white employees.

78. Plaintiff requests damages, and specifically punitive damages according to proof.

## Count 7
## HCA Intentional Infliction of Emotional Distress

79. HCA acted intentional or reckless when they attempted to discipline a homosexual man for sexual harassment of two women.

80. HCA acted intentional or reckless when they left pink sunglasses, pink nail polish, bible verses and a bible on Mr. Kilpatrick's desk.

81. HCA acted intentional or reckless when they called a subsequent employer in an attempt to defame, interfere with and destroy the Plaintiff's new employment position.

82. Said acts are so outrageous that it is not tolerated by civilized society.

83. Said pattern of conduct continue through the last date of employment and beyond to include a phone call in December of 2016.

84. Plaintiff suffered physical manifestations and illness as a result of the intentional infliction of emotional distress and claims damages therefrom.

## Count 8
## Brookdale Intentional Infliction of Emotional Distress

85. Brookdale acted intentional or reckless when they wrote Mr. Kilpatrick's name as "other" on a white board listing employees while simultaneously listing the other employee's names.

86. Brookdale acted intentional or reckless when they wiped his phone and information clean without cause.

87. Brookdale acted intentional or reckless when they attempted to suspend Plaintiff based allegedly upon an "anonymous" phone call without due diligence.

88. Brookdale acted intentional or recklessly with the disparate remarks about black people.

89. Brookdale acted intentional or recklessly when they terminated Plaintiff for a reason that other employees are not terminated.

90. Said acts are so outrageous that they are not tolerated by civilized society.

91. Plaintiff suffered physical manifestations and illness as a result of the intentional infliction of emotional distress and claims damages therefrom.

92. HCA acted intentional or reckless when they called a subsequent employer in an attempt to defame, interfere with and destroy the Plaintiff's new employment position.

93. Said acts are so outrageous that it is not tolerated by civilized society.

94. Plaintiff suffered physical manifestations and illness as a result of the intentional infliction of emotional distress and claims damages therefrom.

## **Relief**

For Trial by jury;

For compensatory damages against the Defendants jointly and severally, or as the trier of fact may allocate, in an amount to be determined by a jury;

For punitive damages against the Defendants in an amount to be determined by a jury;

For any and all costs expended herein;

For Plaintiff legal costs and fees;

For such other and further relief as the Court deems equitable and just.


    Respectfully Submitted:              s/Constance F. Mann

                                            Constance F. Mann
                                            **TN BPR # 014616**
                                            **CA BPR # 165164**
                                              The Law Offices of Constance F. Mann
                                              1107 Battlewood Street
                                              Franklin, TN 37069
                                              Phone: (615) 724-1800
                                              Fax: (615) 724-1809
                                              Email: cmannlaw@msn.com


<u>Bond Statement</u>

COST BOND

I, Constance Mann as Principal(s) and as Surety, am held and firmly bound unto the Federal District Court of the Middle District of Tennessee, for the payment of all costs awarded against the principal. To that end, we bind ourselves, our heirs, executors and administrators.

The Principal(s) is/are commencing legal proceeding in the Federal District Court of the Middle District of Tennessee. If the Principal(s) shall pay all costs which are adjudged against them then this obligation is
void. If the Principal(s) fail to pay then the surety shall undertake to pay all costs adjudged against the Principal(s).

                ____s/Constance Mann_____