**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MONTRELL KILPATRICK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 3:17-cv-00670** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **HCA HUMAN RESOURCES, LLC** | ) | |
| | ) | **MAGISTRATE JUDGE NEWBERN** |
| **Defendant.** | ) | |

## <u>MEMORANDUM</u>

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 50).

The Plaintiff responded to the Motion (Doc. No. 59) and Defendant filed a reply (Doc. No. 67).

For the reasons discussed below, the Motion for Summary Judgment is GRANTED.

## I.    FACTUAL BACKGROUND[1]

Montrell Kilpatrick is a self-described "homosexual black man." (Doc. No. 59 at 1.)  He

worked for HCA Human Resources, LLC ("HCA"), as a recruitment administrator from

November 2014 until March 2016.  Mr. Kilpatrick claims of discrimination arise out of events

taking place during the three months from December 2015 to March 2016.  He agrees that he did

not experience any discrimination at HCA until December 2015. (Doc. No. 60 at ¶ 4.)

---

[1] Most of Plaintiff's responses to Defendant's Statement of Material Facts (Doc. No. 60) fail to comply with the Local Rule 56.01(c) in two major respects.  That rule provides a responding party three response options.  Most of Plaintiff's responses are non-responsive and instead appear to respond to a statement as Plaintiff wishes it was written or are used as a vehicle to argue at length issues beyond the short statements provided by Defendant.  Local Rule 56.01(c) allows the responding party to submit additional statements of material facts, to which the moving party must respond.  Plaintiff did not submit additional facts.  Accordingly, the Court will disregard Plaintiff's responses to certain of Defendant's statements as violative of Local Rule 56.01(c).  In the interest of clarity, Defendant's responses to statements numbered 3, 5-17, 19, and 20, do not comply with Local Rule 56.01.  Thus, the Court will deem these statements admitted for the purpose of ruling on Defendant's summary judgment motion.

On or about December 17, 2015, Mr. Kilpatrick was called to a meeting with HCA's VP of Labor Relations, Thomas Beck. Mr. Beck told Mr. Kilpatrick that two sexual harassment complaints had been lodged against him via the company's anonymous hotline. In defense of these complaints, Mr. Kilpatrick disclosed that he is homosexual. (Doc. No. 60 at ¶ 6.) Mr. Kilpatrick contends that Mr. Beck disseminated information about his sexual orientation to others in the office and that thereafter, people treated him differently. (*Id*.)

Mr. Kilpatrick alleges that following the meeting with Mr. Beck he received his first written discipline, which was from another supervisor and was unrelated to the sexual harassment complaints. (*Id*.) He claims that the discipline was unwarranted because it reflected past performance problems that had been corrected and that the problem was not written up when the problems occurred, only after he disclosed his sexuality. (*Id*.)

Between the end of December 2015 and March 2016, when he was terminated, Mr. Kilpatrick claims that he was subjected to a number of harassing comments, notes, "gifts," and other negative treatment at work that he attributes to be a direct result of the disclosure of his sexual orientation. (Doc. No. 60 at ¶¶6-7.) He says that he received a Christmas gift of pink nail polish, a nail file, and bath bombs and, on a separate occasion, a pair of pink sunglasses were left on his desk. (*Id*.) He had at least four post-it notes with Bible verses telling him he was going to hell left on his desk. (*Id*.) Mr. Kilpatrick believes that the notes were from his director because they were written on paper from her personalized note pad. When the employees in his department changed seats, Mr. Kilpatrick was removed from the area with his team and assigned a seat near the storage area. (*Id*.)

HCA has a tuition assistance program for employees. The required content of a reimbursement application is in dispute. The reimbursement request form states that an application

form must be approved before the employee registers for classes and that once a class is complete, employees were to submit evidence of a passing grade and receipts to get reimbursed. (Doc. No. 50, Ex. 1 at 165). On December 30, 2015, Mr. Kilpatrick submitted requests for tuition reimbursement for classes he took in the fall of 2015; his request was denied because he did not get approval prior to registration. (Doc. No. 52 at ¶ 8.) Mr. Kilpatrick asked HCA to reconsider his request. While reconsidering his untimely reimbursement request, HCA also reviewed his previous reimbursement requests. (Doc. No. 52 at ¶¶ 11-12.) Although the previous requests had already been approved, they identified some discrepancies in course start and end dates and questioned the cost of one of his classes from the spring semester. (*Id.*) Mr. Kilpatrick claims that this intense scrutiny was the result of his disclosure, only weeks earlier, of his sexual orientation. During January and February, HCA asked Mr. Kilpatrick for more information about his classes and for an "official" transcript. (Id. at ¶17.) Mr. Kilpatrick provided information, but not always within the time or in the format requested. (Id. at ¶¶ 13-17.) At one point he sent a screenshot of an account page belonging to another student at a different university with the student's name removed. (Id. at ¶¶ 12-15.) Although Mr. Kilpatrick argues he did not intend to represent that the screenshot was his own account, only to show that the formatting was different between the two universities, HCA took the view that he was manipulating documents and not providing fulsome information in response to their requests. (Doc. 60 at ¶ 11.)

On March 1, 2016, HCA placed Mr. Kilpatrick on an "investigatory suspension" based on his failure to provide all of the information requested in the time and format that HCA demanded it. (Doc. No. 52 at ¶ 17.) On March 9, 2016, Mr. Kilpatrick was fired. (Doc. No. 52 at ¶ 20; Doc. No. 65 at ¶ 16.) HCA asserts that the termination was based entirely on concerns about his response to the investigation into his reimbursement requests and not his job performance. (Doc.

No. 52 at ¶ 20.)   On March 15, 2016, Mr. Kirkpatrick filed a complaint with the EEOC alleging

discrimination based on race, sex, and sexual orientation.  (Doc. No. 50, Ex. 1 at 151.)

On May 9, 2016, Mr. Kirkpatrick began work for Brookdale Senior Living.  In January

2017, after working at Brookdale for about eight months, Mr. Kirkpatrick was fired, allegedly after

Brookdale received an anonymous phone call disclosing that his employment dates at HCA did

not match those on his Brookdale application.

Plaintiff filed this action against HCA alleging discrimination on the basis of race and sex

in violation of Title VII of the Civil Rights Act of 1984, retaliation, tortious interference with

contract, and tortious interference with business relations, and intentional infliction of emotional

distress.  HCA moved for summary judgment on all claims.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The party bringing the summary judgment motion has the initial burden of informing the

Court of the basis for its motion and identifying portions of the record that demonstrate the absence

of a genuine dispute over material facts.  *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003).

The moving party may satisfy this burden by presenting affirmative evidence that negates an

element of the non-moving party's claim or by demonstrating an absence of evidence to support

the nonmoving party's case.  *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most

favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving

party.  *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's

Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).  The Court does not weigh the evidence,

judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

## III.    ANALYSIS

### A.  Sex Discrimination and Hostile Work Environment in Violation of Title VII

Mr. Kilpatrick claims that immediately after he disclosed his sexual orientation to his supervisors he was subjected to a hostile work environment: he was written up for past infractions, his previously approved tuition reimbursement requests were investigated, harassing gifts were placed on his desk, and notes with Bible verses stating he would go to hell were left on his desk. All of this took place in the two and a half months between the time that Mr. Kilpatrick disclosed his sexuality and he was terminated. Mr. Kilpatrick stated that prior to this time, he was not subject to any discriminatory behavior at HCA and he believes that these actions were a direct result of disclosing his sexual orientation. HCA denies that these incidents were motivated by discriminatory animus and further challenges whether certain acts are attributable to HCA. Before considering whether the parties present a dispute of material fact that must be decided by a jury, the Court must determine that Mr. Kilpatrick has a cognizable claim under Title VII.

The Court begins, as it must, with the statutory text. Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Mr. Kilpatrick asserts claims

for discrimination and hostile work environment based on his sexual orientation. Title VII does not expressly include sexual orientation as a protectory category. Whether discrimination based on sexual orientation falls instead within the statutory language prohibiting discrimination based on sex is a question that has produced conflicting decisions among the circuits. The Supreme Court has held that Title VII includes prohibition of discrimination based on "sex stereotypes," such as not being feminine or masculine enough. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989). Since the *Price Waterhouse* ruling, some courts have expanded the understanding of discrimination based on sex to include discrimination based on sexual orientation, reasoning that discrimination based on sexual orientation is result of sex-stereotyping. *See e.g. Hively v. Ivy Tech Cmty Coll of Ind.*, 853 F.3d 339, 345 (7th Cir. 2017) (en banc) (holding a person alleging employment discrimination based on sexual orientation has put forth a claim of sex discrimination for Title VII purposes); *Zarda v. Altitude Exp., Inc.*, 883 F.3d 100 (2d Cir. 2018) (en banc) (holding that sexual orientation discrimination is motivated at least in part by sex and is a subset of sex discrimination for purposes of Title VII), *petition for cert. filed* (U.S. May 29, 2018)(No. 17-1623). The Equal Opportunity Claim Commission ("EEOC") has also determined that sex discrimination "includes discrimination based on an applicant or employee's gender identity or sexual orientation" reasoning that sexual orientation discrimination necessarily involved treating workers less favorably because of their sex and that sexual orientation is "inherently a 'sex-based' consideration." *EEOC Appeal No. 0120133080* (July 15, 2015).

The Sixth Circuit, however, is among those courts continuing to hold that sexual orientation does not form a basis for a claim of sex discrimination under Title VII. In *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 764 (6th Cir. 2006), the Court held that a plaintiff could not pursue a claim for impermissible sex stereotyping on the ground that his perceived sexual orientation failed

to conform to gender norms because he did not allege that he was discriminated against for failing "to conform to traditional gender stereotypes in any observable way at work." *See also*, *Gilbert v. Country Music Ass'n., Inc.*, 432 F. Appx. 516, 519 (6th Cir. 2011); *Tumminello v. Father Ryan High School, Inc.*, 678 Fed. Appx. 281 (6th Cir. 2017). Other circuits have reached the same conclusion. *See, Bostock v. Clayton Cty. Board of Commissioners*, 723 Fed. Appx. 964 (11th Cir. 2018) (per curiam) ("discharge for homosexuality is *not* prohibited by Title VII"); *rehearing en banc denied*, 894 F.3d 1335 (11th Cir. 2018); *petition for cert. filed* (U.S. May 25, 2018)(No. 17-1618).

Plaintiff correctly notes that since the EEOC decision, the Sixth Circuit favorably cited the Seventh Circuit's reasoning in *Hively*. *See R.G. & G.R. Funeral Homes, Inc.*, 884 F.3d 560, 575 (6th Cir. 2018) ("[T]he Seventh Circuit determined that Title VII prohibits discrimination on the basis of sexual orientation – a different question than the issue before this court – by asking whether the plaintiff, a self-described lesbian, would have been fired 'if she had been a man married to a woman … and everything else had stayed the same.'")(citing *Hively,* 853 F.3d 339). However, in that decision, the Sixth Circuit expressly noted that it would not – and could not – overrule the *Vickers* decision. *Id*. ("[A] panel of this Court cannot overrule the decision of another panel when the prior decision constitutes controlling authority" (internal quotations omitted). *Id*. at 580. In *R.G.*, the Court unequivocally left the *Vickers* decision intact. *Vickers* remains controlling authority with respect to Title VII claims based on the basis of sexual orientation and absent a change in law from the Sixth Circuit or the Supreme Court, this Court is obligated to follow that precedent.

Mr. Kilpatrick did not allege that he did not conform to traditional gender stereotypes in any observable way at work. To the contrary, no one at work knew that he is homosexual until

the December 2015 meeting when he told them. Therefore, Mr. Kilpatrick has not stated a cognizable claim for discrimination on the basis of sex under Title VII. Defendant's motion for summary judgment on the claims of sex discrimination and hostile work environment is granted.

## B. Racial Discrimination and Hostile Work Environment in Violation of Title VII

Although Plaintiff's argument is weighted heavily toward his claims of discrimination based on sexual orientation, Mr. Kilpatrick also alleges racial discrimination and a hostile work environment due to race. In support of these claims, Mr. Kilpatrick gives examples of various statements made by his supervisors which he claims are evidence of racial discrimination or form the basis of a hostile work environment. Plaintiff claims that Patricia Contreras, a supervisor, told him and a black co-worker, "I'm sure you guys know how to fry some chicken." (Doc. No. 50, Ex. 1 at 69-72.) Tina Norris, who worked in human resources at HCA, once commented, "What a fancy car. I need to be doing what you do on the side." Plaintiff thought that this comment was racially motivated and implied that he must either be spending the tuition money on a nice car or that he must be dealing drugs. (Doc. No. 67 at 7-9.) He also claims, without a cite to the record, that supervisors referred to him on at least two occasions as "you people." He says that Ms. Norris told him when he called the hotline to make a complaint to human resources that HCA "has to take care of our managers."[2] Mr. Kilpatrick claims that the managers are all white with the implication that "taking care of the managers" indicated racist motivation. (Doc. No. 60 at ¶ 3.) Plaintiff concludes, based on these statements, that the handling and suspicion about his application for tuition reimbursement was racially motivated and ultimately, that he was terminated because of his race.

---

[2] Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 59 at 20) cites to the Kilpatrick Deposition at 206, but this page of the deposition transcript was not filed as an exhibit.

## 1. Racial Discrimination

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits an employer from "discriminating against any individual … because of such individual's race, color, religion, sex, or national origin." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010) (quoting 42 U.S.C. § 2000e-2(a)(1)). To demonstrate a prima facie case of discrimination, a plaintiff must show that: (1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly situated, non-protected employees. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).

To defeat a motion for summary judgment in a discrimination case, a plaintiff must present direct or circumstantial evidence of discrimination. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009)); *see also*, *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009). Direct evidence is evidence that, if believed, dictates a finding, with no need to draw inferences, that "unlawful discrimination was at least a motivating factor in the employer's actions." *Barrett*, 556 F.3d at 515. Circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow the factfinder to draw a reasonable inference that discrimination occurred." *Kyle-Eiland v. Neff*, 408 Fed. Appx. 933, 939-40 (6th Cir. 2011).

Plaintiff has satisfied the first two elements of a prima facie case. He is a member of a protected class and was terminated from his job at HCA. Plaintiff provided evidence that he met performance objectives, and HCA agreed that job performance did not contribute to Mr. Kilpatrick's termination. (Doc. No. 61, Ex. 4; and Doc. No. 52 at ¶ 6.)

To satisfy the fourth element, a plaintiff must either provide evidence that he was replaced by someone outside the protect class or provide evidence that he was treated differently than

similarly situated non-protected employees.  Mr. Kilpatrick has not provided evidence to support either of these scenarios.  He does not claim to have been replaced by someone outside the protected class.  To the contrary, HCA avers, and Mr. Kilpatrick does not contest, that roughly half of his department was the same race as Mr. Kilpatrick.  (Doc. No. 55 at ¶ 3.)  He has not provided any evidence that he was treated differently than similarly-situated, non-protected employees.

To establish that a non-protected employee is an appropriate comparator, "the plaintiff [must] demonstrate that he or she is similarly-situated to the non-protected employee in all relevant respects."  *Dickins v. Interstate Branch Corp.*, 384 Fed. Appx. 465, 468 (6th Cir. 2010) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)). In the disciplinary context, this requires that the plaintiff and the proposed comparator have engaged in acts of "comparable seriousness." *Id*. (quoting *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002)). The Court may consider the egregiousness of the conduct, the context of the conduct, management's knowledge of the conduct, the comparator's disciplinary history relative to the plaintiff, and the impact of the comparator's misconduct relative to the plaintiff's.  *See Oliver v. St. Luke's Dialysis, LLC*, 491 Fed. Appx. 586, 588 (6th Cir. 2012); *Barry v. Nobel Metal Processing, Inc.*, 276 Fed. Appx. 477, 483 (6th Cir. 2008); *Mazur v. Wal-Mart Stores, Inc*., 250 Fed. Appx. 120, 127 (6th Cir. 2007).  To make that determination, courts consider whether the individuals "have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id*. (quoting *Ercegovich*, 154 F.3d at 352).

Mr. Kilpatrick has not provided any evidence that similarly situated non-protected (i.e. non-black) employees were treated differently.  HCA fired Mr. Kilpatrick due to concerns about his requests for tuition reimbursement and the subsequent investigation and he must, therefore,

present evidence that non-protected employees who applied for education reimbursement and had comparable problems with their applications were treated more favorably. Mr. Kilpatrick has not presented *any* evidence that non-protected employees in similar circumstances were treated more favorably, and therefore has not met his burden as to the fourth element. For these reasons, the Motion for Summary Judgment on the claim of racial discrimination is granted.

## 2. Hostile Work Environment

Mr. Kilpatrick also asserts a claim of hostile work environment because of race under Title VII. To survive a motion for summary judgment a plaintiff must provide proof that (1) plaintiff belongs to a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to act. *Phillips v. UAW Int'l.*, 854 F.3d 323, 327 (6th Cir. 2017).

On summary judgment, the Court looks at the totality of the alleged race-based harassment to determine whether it was "sufficiently severe to alter the conditions of [his] employment and create an abusive working environment." *Id*. (citing *Williams v. CSX Transp. Co*., Inc., 643 F.3d 502, 512 (6th Cir. 2011)). "In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). "Isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Thus, occasional offensive utterances do not rise to the level required to create a hostile work environment because, "[t]o hold otherwise

would risk changing Title VII into a code of workplace civility." *Phillips*, 854 F.3d at 327 (citing *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008)).

The Sixth Circuit has found that even offensive and bigoted conduct is insufficient to constitute a hostile work environment if it is neither pervasive or severe enough to satisfy the claim's requirements. See e.g. *Phillips*, 854 F.3d at 327 (no hostile work environment when defendant made several racially offensive statements over two years); *Reed v. Procter & Gamble Mfg. Co.*, 556 Fed. Appx. 421, 432 (6th Cir. 2014) (no hostile work environment when plaintiff was subjected to race-based comments and his supervisor stood behind him and made a noose out of a telephone cord).

Mr. Kilpatrick identified several statements allegedly made by supervisors or other management at HCA that he deemed racially offensive. The statements, if proven, were neither pervasive enough nor severe enough to create a hostile work environment. The Sixth Circuit has established a high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory. The conduct alleged here does not clear that bar. For these reasons, Defendant's Motion for Summary Judgment on Plaintiff's Title VII hostile work environment claim is granted.

**C. Retaliation in Violation of Title VII for Filing an EEOC Complaint**

After he was suspended without pay on March 10, 2016, Plaintiff filed an EEOC charge against HCA on March 15, 2016, alleging discrimination based on race and gender and retaliation. On May 9, 2016, Plaintiff began new employment at Brookdale Senior Living. Approximately, eight months later, in January 2017, Brookdale terminated Plaintiff's employment after receiving an "anonymous" phone call drawing attention to an alleged discrepancy in Mr. Kilpatrick's employment application regarding the date he left HCA. (Doc. No. 50, Ex. 1 at 28-35.)

Section 704(a) of Title VII of the Civil Rights Act of 1964 makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment" who have availed themselves of Title VII's protections. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, plaintiff must establish that: (1) he engaged in an activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008). For purposes of section 704(a), an "employment action" can be one directed toward a former employee. *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) (holding that a former employee stated a claim for retaliation under Title VII when his previous employer gave him a negative reference in retaliation for his having filed an EEOC charge). To establish causation, Plaintiff must "proffer evidence sufficient to raise the inference that his protected activity" was the reason for his termination. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

To survive a motion for summary judgment, Plaintiff cannot rely on conjecture or conclusory accusations. *Arendale,* 519 F.3d at 605 (citing *Lewis v. Phillip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) ("In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy."). In *Arendale*, the Sixth Circuit held that plaintiff had not presented evidence sufficient to survive a motion for summary judgment when he "presented nothing more than his own subjective opinion" of defendant's motivation. 519 F.3d at 601.

Here, Mr. Kilpatrick has established the first two elements of a retaliation claim. He engaged in an activity protected by Title VII when he filed a charge of discrimination with the

EEOC and HCA knew about the EEOC charge. (Doc. No. 51, Ex. 1 at 151-52.) In support of the remaining two elements, however, Mr. Kilpatrick has not provided any evidence other than his own conjecture. Mr. Kilpatrick claims that the human resources officer at Brookdale received an anonymous phone call about his employment application. (*Id.* at 28-35.) Mr. Kilpatrick never learned who made the phone call, where they worked, or why they made the phone call. (*Id.*) Plaintiff provides no evidence that the anonymous phone call to Brookdale originated with HCA or that the anonymous phone call was made in retaliation for filing an EEOC charge ten months prior. His allegations rest entirely on conjecture. Mr. Kilpatrick's has not provided evidence of retaliation sufficient to survive a motion for summary judgment. For these reasons, Plaintiff's Motion for Summary Judgment on the claim of retaliation is granted.

### D. Tortious Interference with Contract

On the basis of the "retaliatory" phone call that Plaintiff believes was from HCA, Mr. Kilpatrick also brings claims for tortious interference with contract and tortious interference with business relationship. As with the claim for retaliation, for these claims to survive a motion for summary judgment, Plaintiff must present more than a scintilla of evidence based on more than mere speculation, conjecture, or fantasy to support his claim.

To establish tortious interference with contact or tortious interference with business relationship, as with all tort claims, the plaintiff must provide evidence that an action by the defendant was the proximate cause of an injury to plaintiff. *See TSC Indus., Inc., v. Tomlin*, 743 S.W. 2d 169, 173 (Tenn. Ct. App. 1987) (elements of tortious interference with contract include a "malicious act" that is the "proximate cause" of a breach of contract); *Trau-Med of America, Inc. v. Allstate Inc. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (tortious interference with business

relationships requires both improper motive and improper means of interference with a known business relationship, causing harm to the plaintiff).

Plaintiff has provided no evidence whatsoever, other than his own supposition, that HCA did anything that caused him to be terminated from Brookdale. He has only his own speculation that the phone call originated with HCA. Even if Mr. Kilpatrick knew that HCA made the phone call, which he has testified that he does not, his recounting the content of the call as relayed to him by a third-party is hearsay that cannot be relied upon by the Court on a motion for summary judgment. *See Hoover v. Walsh*, 682 F.3d 481, 491 n.34 (6th Cir. 2012) (noting that a court cannot rely on inadmissible hearsay at summary judgment); Fed. R. Civ. P. 56(c)(4) (stating that affidavits used to support motions for summary judgment "must be made on personal knowledge").

Because Mr. Kilpatrick has not provided evidence that HCA caused his termination from Brookdale, his claims for tortious interference with contact and tortious interference with business relationship cannot survive the motion for summary judgment and Defendant's Motion for Summary Judgment on these claims is granted.

### E. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress a plaintiff must show that the defendant's conduct was (1) intentional or reckless; (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff. *Cossairt v. Jarrett Builders, Inc.* 292 F. Supp. 3d 779, 788 (M.D. Tenn. 2018) (citing *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012)). Tennessee has adopted the standard for outrageous conduct described in the Restatement (Second) of Torts. *Bain v. Wells*, 936 S.W.2d 618, 622 n. 3 (Tenn. 1997). "Liability has been found only where the conduct has been so outrageous in character, so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and

utterly intolerable in a civilized community." Restatement (Second) of Torts, Section 46, Comment D.

Mr. Kilpatrick's claim for intentional infliction of emotional distress rests on the basis of the following actions by HCA: (1) attempted discipline for sexual harassment of two women; (2) someone leaving pink sunglasses, pink nail polish, Bible verses and a Bible on his desk; and (3) calling a subsequent employer to interfere with Plaintiff's new job. As a result of these actions Mr. Kilpatrick claims that he has depression, sees a therapist, and is taking anti-depressant medication. (Defendant Response to Statement of Facts at ¶21). The Court need not decide whether Mr. Kilpatrick has provided evidence of a "serious mental injury" because he has failed to establish the outrageousness element.

Plaintiff's burden to demonstrate outrageous conduct "is not an easy burden to meet." *Brown v. Mapco Exp., Inc*., 393 S.W.3d 696, 703 (Tenn. Ct. App. 2012). Liability for the intentional infliction of emotional distress does not extend to mere insults and indignities. *Bain*, 936 S.W.2d at 622. Cases finding intentional infliction of emotion distress involve conduct that is much more egregious than that which occurred here. *See e.g*., *Johnson v. Woman's Hospital*, 527 S.W.2d 133 (Tenn Ct. App. 1975) (mother shown her deceased baby preserved in a formaldehyde jar); *Pollard v. E.I. DuPont De Nemours Inc*., 412 F.3d 657, 664 (6th Cir. 2005) (years of mistreatment, including vile insults, sabotage, hostility, that escalated so that the plaintiff feared for her physical safety). Even if Mr. Kilpatrick did state a claim for discrimination, discriminatory conduct does not automatically reach the level of outrageousness required for the intentional infliction of emotional distress. *See Arnett v. Domino's Pizza I, LLC*, 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003). As a matter of law, the facts alleged, even if proven, are insufficient to support an intentional infliction of emotion distress claim. For these reasons Defendant's

Motion for Summary Judgment on the claim of intentional infliction of emotional distress is granted.

## F.  CONCLUSION

For the reasons stated, Plaintiff has failed to present evidence sufficient to defeat the motion for summary judgment.  Defendant's Motion for Summary Judgment is **GRANTED** on all claims.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE