IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MONTRELL KILPATRICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:17-cv-00670 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| HCA HUMAN RESOURCES, LLC | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Plaintiff was employed by Defendant HCA Human Resources, LLC ("HCA") from November 2014 until March 2016. Currently before the Court are Plaintiff's claims of unlawful discrimination and hostile work environment under Title VII. The Court previously dismissed these claims because, before the Supreme Court's ruling in *Bostock v. Clayton County, Ga.*, 140 S. Ct. 1731 (2020), the Sixth Circuit did not recognize sexual orientation as a basis for a claim of sex discrimination under Title VII. (*See* Order and Memorandum, Doc. Nos. 68, 69). On appeal the Sixth Circuit vacated the Court's judgment regarding Plaintiff's sex-based Title VII claims and remanded to this Court for reconsideration in light of *Bostock*.[1] (Doc. Nos., 80, 81).

To facilitate the Court's reconsideration of Plaintiff's sex-based Title VII claims, the parties agreed to submit supplemental summary judgment briefs "relying, to the extent possible, on the facts and evidence already in the record." (*See* Doc. No. 83). Defendant filed a "Renewed and Supplemental Motion for Summary Judgment" and memorandum of law. (Doc. Nos. 85, 86). Defendant did not file a statement of material facts, instead relying on the statement of facts and supporting exhibits filed with its original motion for summary judgment. Plaintiff filed a response

---

[1] The Sixth Circuit affirmed the remainder of the Court's ruling. (Doc. No. 80).

to Defendant's renewed motion for summary judgment (Doc. No. 88), and filed an amended response to Defendant's statement of facts (Doc. No. 89), and additional excerpts from Plaintiff's deposition (Doc. No. 90). Defendant filed Reply (Doc. No. 94) and a Motion to Strike Plaintiff's Amended Response to Defendant's Statement of Material Facts (Doc. No. 91). Plaintiff responded to the Motion to Strike (Doc. No. 96) and Defendant filed a Reply (Doc. No. 97).

The Court will address the motion to strike before turning to the substance of the renewed motion for summary judgment.

## I. MOTION TO STRIKE

Defendant requests the Court strike Plaintiff's Amended Response to Defendant's Statement of Material Facts. Defendant argues that the Amended Response is prevented by "clear estoppel" because Defendant relied on the facts and evidence already submitted by both Parties, and relied on the Court's prior findings regarding these facts and evidence. Defendant correctly notes many of Plaintiff's original responses to Defendant's statement of facts failed to comply with Local Rule 56.01(c). As a result, in considering the first motion for summary judgment, the Court disregarded Plaintiff's responses to statements numbered 3, 5-17, 19, and 20. (Doc. No. 68 at 1, n.1). Defendant argues that Plaintiff should not be permitted a "second bite at the apple" by amending the deficient responses with the luxury of the Court's prior ruling. Defendant further argues that Plaintiff's Amended Response again fails to comply with Local Rule 56.01(c) because he denies facts without citing to any part of the record to support his position, or in some cases without any cite to the record at all, cites to unauthenticated documents, and injects argument instead of opposing facts. Defendant also complains that Plaintiff offers an additional statement of facts as the introduction to his brief, not set out separately as required by Local Rule 56.01(c).[2]

---

[2] Local Rule 56.01(c) provides: "[T]he non-movant's response [to the movant's statement of facts] may contain a concise statement of any additional facts that the non-movant contends are material and as

Finally, Defendant argues that Court should disregard much of Plaintiff's evidence because it is unauthenticated and/or hearsay. Defendant concedes that some of the documents were attached to the Declaration of Tina Norris (Doc. No. 52 (submitted by Defendant)), but argues that Plaintiff cannot rely on her authentication of the documents because Ms. Norris did not testify to the fact for which Plaintiff cites them.

Plaintiff argues he must be allowed to amend his responses to Defendant's Statement of Material Facts because of the "material change in the legal landscape" and "different burden of proof." (Doc. No. 96 at 1). He argues that "the rules, statutes, and case law clearly allow any non-moving party to address material facts when a Motion for Summary Judgment is filed" and that none of the rules limits the availability of a response to "new" motions. Plaintiff argues that he filed an amended response in an attempt to assist the Court by removing irrelevant facts and argument, providing citations to the record, and improving accuracy of the record. Plaintiff contends that this saves the Court time by reducing responses.

The Court does not disagree that Plaintiff is permitted to amend his responses to Defendant's Statement of Material Facts. Nothing in the Court's Order or the Rules prohibits a party from amending a response when the motion is renewed, and the parties are provided an opportunity for supplemental briefing. However, Plaintiff's responses, though improved from the first iteration, still contain argument, and lack sufficient citations to the record. Frequently, when citations are made, the cited reference does not support the asserted fact.

For example, in response to SOF #6, Plaintiff denies that "The December 2015 request was initially denied because it did not comply with the Education Reimbursement Policy." In support

---

to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact must be set forth in a separate numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute."

3

of this denial Plaintiff states, "HCA did not have an Education Reimbursement Policy on December 30, 2015 (Dkt 61-1, reimbursement policy effective January 27, 2016). Per this record the written policy was invoked on or about April 6, 2016 and effective retroactively to January 27, 2016." There are several problems with Plaintiff's response. First, the cited document, which speaks for itself, states that the reimbursement policy was effective January 27, 2016, and replaces a policy dated January 1, 2015. (Doc. No. 52-6). The document does not support Plaintiff contention that there was no policy in December 2015, only that the policy provided was not the policy in effect. Second, Plaintiff's second statement provides no citation to the record whatsoever. From whence has Plaintiff divined that the policy was retroactively implemented? The response provides no answer.

The responses are replete with the sort of quibbling, argument, and lack of citation demonstrated here, rendering the responses generally unhelpful in determining the facts. However, the Court deems the most efficient course of action in light of the circumstances is to deny the motion to strike. However, in considering Plaintiff's response to the Statement of Material Facts, the Court will disregard all argument, characterization of documents, and statements for which there is no citation to the record. The Court notes that Defendant's concerns with the authenticity of documents is largely resolved by the authentication of these documents through the Declarations of Tina Norris (Doc. No. 52) and Suzi Rodgers (Doc. No. 53).

Finally, although the evidence is largely the same as it was upon the Court's first consideration of these claims, Plaintiff has filed additional deposition excerpts consisting of excerpts that were erroneously omitted from Doc. No. 60[3] and an additional 20 pages of testimony

---

[3] Plaintiff previously failed to file excerpts from his deposition. (*See* Doc. No. 75). Plaintiff's counsel stated that she did not notice the omission until she was preparing for appellate briefing and moved to correct the error in the record. (*Id.*). Defendant stipulated to correct the record (Doc. Nos. 77 and 78)

4

Case 3:17-cv-00670   Document 103   Filed 03/22/22   Page 4 of 16 PageID #: 1788

not previously identified (filed at Doc. Nos. 90-1 and 90-2). The Court will consider these additional deposition excerpts.

## II. FACTUAL BACKGROUND[4]

Montrell Kilpatrick is a self-described "black gay man." (Doc. No. 88 at 1.) He worked for HCA Human Resources, LLC ("HCA"), as a recruitment administrator from November 2014 until March 2016. (Doc. No. 89 at ¶ 2). Mr. Kilpatrick's claims of sex-based discrimination arise out of events taking place during the three months from December 2015 to March 2016. (*Id*., ¶ 4). He agrees that he did not experience any discrimination at HCA until December 2015. (*Id*.).

In mid-December 2015,[5] Mr. Kilpatrick disclosed to Thomas Beck, HCA's vice president of labor relations, that he is gay. (Kilpatrick Dep., Doc. No. 78-2 at 150-54). He revealed this information to defend against accusations that he touched female coworkers inappropriately. (*Id*.). Plaintiff contends Mr. Beck disseminated information about his sexual orientation to others in the office and that people treated him differently thereafter. (*Id*. at 157-60).

Mr. Kilpatrick alleges that the same day he disclosed his sexual orientation, his supervisor issued a written warning for error rates the previous month even though the errors had been

---

and the Court Ordered the record corrected to include the excerpts identified in Plaintiff's motion. (Doc. No. 79).

[4] Although the Court has considered Plaintiff's revised responses to Defendant's Statement of Material Facts, for the most part, the material facts are essentially the same as upon the Court's review of the first motion for summary judgment. The Court notes, however, that some facts that were part of Plaintiff's first response (Doc. No. 60) are not included in the amended response (Doc. No. 89). For example, there is nothing in the amended response about the meeting in which Plaintiff disclosed that he is gay or about the disciplinary write-ups. Plaintiff has, however, provided citations to the record within the response memorandum (though some of them are not accurate). Where appropriate, the Court relies on these citations.

[5] The exact date is not important. The meeting took place either on December 10 or December 17, 2015. Plaintiff's memorandum states that the meeting took place on December 10, 2015 (*see* Doc. No. 88 at 1-2). In briefing the first motion for summary judgment, Plaintiff claimed the meeting took place on December 17, 2015. (*See* Doc. No. 59 (throughout); Doc. No. 60, ¶¶ 6, 7). Plaintiff also stated during his deposition that the meeting was on December 17, 2015. (Kilpatrick Dep., Doc. No. 78-2 at 200, 233).

corrected.[6] (*See* Doc. No. 52-2). He claims that the discipline was unwarranted because it reflected past performance problems that had been corrected and that the problem was not written up when it occurred, only after he disclosed his sexuality. (*Id*.).

Between the end of December 2015 and his termination on March 9, 2016, Mr. Kilpatrick claims that he was subjected to a number of harassing comments, notes, "gifts," and other negative treatment at work that he attributes to be a direct result of the disclosure of his sexual orientation. (Kilpatrick Dep., Doc. No. 78-2 at 179-82, 226-27, 233-34). He says that he received a gift of pink nail polish, a nail file, and bath bombs when employees were exchanging "Secret Santa" gifts. (*Id*. at 181-82). On separate occasions, at least four post-it notes with Bible verses were left on his desk. (*Id*. at 182-83). Mr. Kilpatrick believes that the notes were from his director because they were written on paper from her personalized note pad. (*Id*.). He said the Bible verses made him feel judged. (*Id*. at 183, 237 ("I think it was more so judgment." "I felt judged.")). When the employees in his department changed seats, Plaintiff was "kind of isolated off to a corner by [him]self." (*Id*. at 226-28).

HCA has a tuition assistance program for employees. In February and April 2015, Plaintiff submitted requests for tuition reimbursement that were approved by HCA. (Doc. Nos. 52-7, 52-8). On December 30, 2015, he submitted another request for tuition reimbursement, which was denied. (Norris Decl., Doc. No. 52 at 8). Tina Norris, a Human Resources Business Partner, stated that the request was initially denied because Plaintiff did not receive approval before the beginning of the semester. (*Id*.). Mr. Kilpatrick asked HCA to reconsider his request. (*Id*., ¶ 9). While reconsidering his reimbursement request, HCA also reviewed his previous reimbursement

---

[6] The written warning states that Plaintiff previously received a verbal warning due to performance issues and that due to the previous verbal warning, additional performance issues resulted in a written warning. (Doc. No. 52-2). The form also stated that there were multiple issues of unprofessional behavior – first on October 20, 2015, and then on December 10, 2015. (*Id*.).

requests. (*Id*. ¶¶ 11-12.) Although the previous requests had already been approved, they identified some discrepancies in course start and end dates and questioned the cost of one of his classes from the spring semester. (*Id*.) Mr. Kilpatrick claims that this intense scrutiny was the result of his disclosure, only weeks earlier, of his sexual orientation.

During January and February, HCA asked Mr. Kilpatrick for information and documentation related to his reimbursement requests, specifically transcripts, degree requirements, and tuition amounts. (*Id*. ¶17; Doc. Nos. 52-9, 52-10, 52-11). Mr. Kilpatrick provided information, but not always within the time or in the format requested. (Norris Decl., Doc. No. 52 ¶¶ 13-17). For example, in response to a request for the degree requirements he emailed a link to the current curriculum, but noted that "it looks like some of the curriculum has been updated" and that he would try to find his original materials at home. (Doc. No. 52-9). Plaintiff states that he logged into his university account "multiple times" in the presence of Ms. Norris and printed a transcript. (Kilpatrick Dep., Doc. No. 78-3 at 357, 361, 371, 383). On February 26, 2016, he emailed a screenshot of his "unofficial transcript," prompting HCA to request an official transcript. (*See* Doc. No. 52-10). At one point he sent a screenshot of an account page belonging to another student at a different university with the student's name removed. (Norris Decl., Doc. No. 52 ¶¶ 12-15.) Plaintiff agrees the document looked like it had been manipulated, but argues he never represented that the screenshot was his own account. (Kilpatrick Dep., Doc. No. 78-3 at 372).

On March 1, 2016, HCA placed Mr. Kilpatrick on an "investigatory suspension" based on his failure to provide all of the information requested in the time and format that HCA requested it. (Norris Decl., Doc. No. 52, ¶¶ 15-17). While he was suspended, Defendant discovered other education reimbursement documents in which it appeared Plaintiff had altered the account balance on his student account. (*Id*. ¶ 19; Doc. No. 52-16). Plaintiff explained that he had corrected the

7

student account balance to account for a $1,000 scholarship. (Kilpatrick Dep., Doc. No. 90-2 at 368-69).

On March 9, 2016, HCA fired Mr. Kilpatrick. (Norris Decl., Doc. No. 52, ¶ 20; Doc. No. 89, ¶ 16). HCA asserts that the termination was based entirely on concerns about his response to the investigation into his reimbursement requests and not his job performance. (Doc. No. 52 at ¶ 20).

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper question of fact. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary

judgment; instead, there must be evidence of which the trier of fact could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

IV.     ANALYSIS

A. Disparate Treatment Discrimination

Title VII prohibits employers from treating an employee differently based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). The prohibition against sex-based discrimination includes discrimination based on an employee's sexual orientation. *Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020).

When a plaintiff relies on circumstantial evidence of discrimination, his claims "are subject to the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), subsequently modified in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981)." *Logan v. MGM Grand Casino*, No. 21-1149, 2021 WL 6932348, at *4 (6th Cir. Dec. 22, 2021). Under this framework a plaintiff must first make out a prima facie case of discrimination by demonstrating that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly situated non-protected employees. *Id*. (citing *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001)). If a plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to provide a non-discriminatory reason for the adverse employment action. *Smith v. City of Toledo, Ohio*, 13 F.4th 508, 515 (6th Cir. 2021). Once provided, it then becomes the plaintiff's burden to provide evidence from which a finder of fact could conclude that the proffered reason was pretext for discrimination. (*Id*.).

As an initial matter, the Court notes that although Plaintiff has identified several actions on the part of Defendant that he claims were motivated by discriminatory animus, for purposes of

9

establishing a prima facie claim of discrimination, the adverse employment action is the termination of his employment. An adverse employment action is "a materially adverse change in the terms of employment." *Lee v. Cleveland Clinic Found.*, 676 F. App'x 488, 494 (6th Cir. 2017). "Termination, decrease in wage or salary, change in title, diminished material responsibilities, or a material loss of benefits are all examples of a materially adverse change." *Id.* (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008)). "[I]ncreased surveillance and discipline, whether warranted or not, do not constitute a material adverse change of the terms of employment in the discrimination context because those actions do not 'constitute [ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Id.* Accordingly, to the extent that Plaintiff argues that increased scrutiny of his education reimbursement documentation and the request for additional information was itself actionable discrimination, this argument fails. The same is true of his argument that he was disciplined for conduct that did not receive discipline before he disclosed that he is gay.

Defendant challenges Plaintiff's ability to establish the fourth element, that he was treated differently than similarly situated non-protected employees. Here, Plaintiff must offer evidence that a similarly-situated non-protected employee engaged in similar conduct and was not terminated.

"To establish that a non-protected employee is an appropriate comparator, 'the plaintiff [must] demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects.'" *Dickens v. Interstate Branch Corp.*, 384 Fed. App'x 465, 468 (6th Cir. 2010) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)). The Sixth Circuit has cautioned that the similarly situated inquiry should not be "exceedingly narrow." *Lynch v. ITT*

*Ed. Servs., Inc.*, 571 F. App'x 440, 444 (6th Cir. 2014) (citing *Jackson v. FedEx Corp. Servs.*, 518 F.3d 388, 396 (6th Cir. 2008)).

The factors relevant to this inquiry depend on the factual context of the case. *Id.* In the disciplinary context, the plaintiff and the proposed comparator must have engaged in acts of "comparable seriousness." *Dickens*, 384 Fed. App'x at 468 (quoting *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002)). The Court may consider the egregiousness of the conduct, the context of the conduct, management's knowledge of the conduct, the comparator's disciplinary history relative to the plaintiff, and the impact of the comparator's misconduct relative to the plaintiff's. *See Oliver v. St. Luke's Dialysis LLC*, 491 Fed. App'x 586, 588 (6th Cir. 2012); *Barry v. Noble Metal Processing, Inc.*, 276 Fed. App'x 477, 483 (6th Cir. 2008); *Mazur v. Wal-Mart Stores, Inc.*, 250 Fed. App'x 120, 127 (6th Cir. 2007). To make that determination, courts consider whether the individuals "have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Dickens*, 384 Fed. App'x at 468 (quoting *Ercegovich*, 154 F.3d at 352).

Plaintiff was terminated due to his response to the investigation into his reimbursement requests. He does not identify any other similarly situated employee who was treated more favorably – *i.e.*, not fired after submitting altered documentation in support of a request for education reimbursement. Plaintiff argues that, in this case, he serves as his own comparator, because he has been both a non-protected and protected employee. He argues that Defendant treated reimbursement requests submitted by "straight Kilpatrick" differently (*i.e.*, with less scrutiny) than similar request for reimbursement submitted by "gay Kilpatrick." Defendant argues Plaintiff cannot rely on himself as a comparator.

Though Defendant's argument has logical appeal – indeed, what better evidence of discrimination that the same person being treated differently for no apparent reason other than an announced change in sexual orientation (or gender or religion). In this case, however, the Court need not decide whether Mr. Kilpatrick can serve as his own comparator because he has not shown that "straight Kilpatrick" is similarly-situated to "gay Kilpatrick" for purposes of this claim.

Plaintiff argues that he submitted substantially similar requests for education reimbursement and that it was not until after Defendant learned he was gay that they identified alleged discrepancies (including in previously approved requests), denied his request for reimbursement, and asked for documentation that had not previously been required. The problem with Plaintiff's argument is that the conduct that led to his termination was not solely that there were "discrepancies" in his reimbursement documentation; it was that when asked to explain the discrepancies, Plaintiff submitted obviously manipulated documentation. In addition, a review of Plaintiff's internal email account appeared to show other altered education documents in which Plaintiff had altered the account balance on his student account. There is no evidence that "straight Kilpatrick" submitted altered documents. Accordingly, he is not an appropriate comparator.

Plaintiff conceded that he is not able to identify any other employees who were thought to have presented falsified education reimbursement documents and were not terminated. (Kilpatrick Dep., at 420, 500-01). Because he has not identified an appropriate comparator, Plaintiff does not meet his prima facie burden. Accordingly, summary judgment will be granted in favor of Defendant on the claim related to disparate treatment discrimination.

### B. Hostile Work Environment

Without proving a tangible employment action, a plaintiff may establish a violation of Title VII by proving the sex discrimination created a hostile or abusive work environment. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). To establish a hostile work environment claim a plaintiff must prove: (1) the employee is a member of a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on the employee's sex; (4) the harassment created a hostile work environment; and (5) the employer is liable. *Id.*; *see also Doe v. City of Detroit, Mich.*, 3 F.4th 294, 300 (6th Cir. 2021). Defendant argues Plaintiff cannot establish the fourth element – that the harassment created a hostile work environment.

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 21 (1993). Both an objective and subjective test must be met: the conduct must be severe or pervasive enough to create an environment a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive. *Id.* at 21-22.

"In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

13

Occasional offensive utterances do not rise to the level required to create a hostile work environment because, "[t]o hold otherwise would risk changing Title VII into a code of workplace civility." *Phillips*, 854 F.3d at 327 (citing *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008)).

The Sixth Circuit has set a high bar for what constitutes a hostile work environment. *See e.g.*, *Burnett v. Tyco Corp.*, 203 F.3d 980, 981 (6th Cir. 2000) (finding that conduct was not "sufficiently severe or pervasive" to support a finding of a hostile work environment where plaintiff alleged her supervisor "placed a pack of cigarettes containing a lighter inside [plaintiff's] tank top and brassiere strap," leaving her "stunned, shocked, and exposed," and he twice made inappropriate, sexually charged comments to her"); *Bowman*, 220 F.3d at 459 (dismissing hostile work environment claim where the plaintiff alleged his supervisor had rubbed his shoulder on one occasion and "grabbed his buttocks" on another; finding these events, even considered in conjunction with a handful of sexually suggestive comments by the supervisor, were not sufficiently severe or pervasive to create a hostile work environment.).

Plaintiff claims the following instances of harassment between mid-December, when he disclosed that he is gay, and March 9, 2016, when he was terminated, created a hostile work environment. Plaintiff states he was issued written warnings "write-ups" for errors and events that had already been resolved. (Pl. Resp., Doc. No. 88 at 2 (citing Doc. No. 52-2, 52-5)). One of these write-ups was subsequently removed from his file. (*Id*. (citing Doc. No. 52-3)). Pink nail polish and sunglasses were left on his desk. (*Id*. (citing Kilpatrick Dep., Doc. No. 78-2 at 178-82)). On separate occasions, at least four post-it notes with Bible verses were left on his desk. (*Id*. at 182-83). Mr. Kilpatrick believes that the notes were from his director because they were written on paper from her personalized note pad. (*Id*.). He said the bible verses made him feel judged. (*Id*. at 183, 237 ("I think it was more so judgment." "I felt judged.")). A supervisor treated him as a

14

feminine counterpart by commenting on his clothing and using terms like "yass," "honey," "workout," and saying "those shoes are fierce" while snapping her fingers in a manner that Plaintiff thought was "not okay."[7] (Kilpatrick Dep., Doc. No. 78-2 at 169-72). Plaintiff testified that these comments made him uncomfortable. (*Id*.). When the entire team received new seating assignments, he was assigned to a desk away from the rest of the team. (*Id*. at 226-28). Finally, Defendant investigated a tuition reimbursement it had previously approved. In what Plaintiff characterizes as "the ultimate hostile work environment," Defendant requested an official transcript with an impossibly short deadline and fired Plaintiff not long before the transcript arrived. (*See* Pl. Resp., Doc. No. 88 at 9-11).

The Sixth Circuit has established a high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory. The conduct alleged here does not clear that bar. At most, the gifts and comments on Plaintiff's clothing are akin to offensive utterances. The relocation of his seating assignment was part of a team-wide reassignment. (*See* Kilpatrick Dep., Doc. No. 78-2 ("Everybody had a change of seating assignments, but I was completely isolated from my team. I was not with the 7:00 to 3:00 crew anymore.")). Even if Plaintiff were purposefully placed away from his teammates, he does not claim that the relocation made it more difficult to perform his job. Similarly, the two disciplinary write-ups (one of which was removed), are not alleged to have affected his job responsibilities, pay, or ability to perform his job. Considering the totality of the conduct alleged, it is neither severe enough nor pervasive enough to create an actionable hostile work environment.

---

[7] *See* Kilpatrick Dep., Doc. No. 78-2 at 169-70. Plaintiff testified that he did not know if the co-worker made these statements because she "felt more comfortable" with him or "wanted more of a connection." *Id*. He found the comments "inappropriate." *Id*.

15

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's Title VII hostile work environment claim will be granted.

## C. CONCLUSION

For the reasons stated, Defendant's Motion to Strike Plaintiff's Amended Response to Defendant's Statement of Material Facts (Doc. No. 91) will be **DENIED** and Defendant's Motion for Summary Judgment (Doc. No. 85) will be **GRANTED**. An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE